# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

ARLING L. OLSON,

      Plaintiff,

  v.

                                            Case No. 10-cv-199

TIMOTHY G. MOORE,

in his individual capacity,

      Defendant.

---

### PLAINTIFF'S BRIEF IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Arling Olson, Plaintiff

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone:         (608) 283-6001
Facsimile:     (608) 283-0945
E-mail:        jsolson@scofflaw.com

ATTORNEYS FOR PLAINTIFF

## Table of Contents

Introduction ............................................................................................. 1

Argument .............................................................................................. 1

I.   In a Summary Judgment Motion, the Defense Chooses the Issues, and the Plaintiff Gets the Benefit of any Disputes. .................................... 1

II.   A Reasonable Trier of Fact Could Find that the Policy-Maker Exception Does not apply to Polk County Deputy Sheriffs. ..................... 4

III.   A Reasonable Trier of Fact Could Find that Sheriff Moore Engaged in a Campaign of Petty Harassment of the Plaintiff after the 2006 Election. .................................................................................. 6

IV.   A Reasonable Trier of Fact Could Find that Sheriff Moore was Motivated to Retaliate Against the Plaintiff because of the Plaintiff's Protected Speech. ......................................................................... 10

V.   A Reasonable Trier of Fact Could Find that Sheriff Moore Demanded the Criminal Prosecution of the Plaintiff and Secured this Result by Misrepresenting the Facts and Withholding Decisive Evidence of the Plaintiff's Innocence........................................................... 12

   A.   It is a Violation of the Due Process Clause of the Fourteenth Amendment for a Law Enforcement Officer to Cause the Criminal Prosecution of an Innocent Person by the Presentation of False Evidence or the Withholding of Decisively Exculpatory Evidence.... 12

   B.   There are Material Issues of Fact for Trial as to Whether Defendant Moore Presented False Evidence or Withheld Decisively Exculpatory Evidence............................................................... 16

   C.   The Theoretical Availability of a State Law Malicious Prosecution Claim does Not Defeat the Plaintiff's Due Process Claim. ................................................................................ 18

   D.   A Reasonable Jury Could Find that the Criminal Prosecution of Plaintiff Olson would not have Occurred without Defendant Moore's Presentation of False Evidence and Withholding of Decisively Exculpatory Evidence............................................................... 19

i

Conclusion ............................................................................................... 21

**Introduction**

The facts are set forth at great length in the parties' proposed findings and responses, and will not be repeated here. Suffice it to say that they paint a picture of a conscientious deputy who ran for Sheriff against an incumbent and also cooperated in investigations against him, who then reaped the whirlwind of a campaign of on-the-job harassment culminating in his being prosecuted on false criminal charges of perjury and obstructing at the direct instance of, and based on the false and misleading evidence submitted by the Defendant Sheriff.

**Argument**

I.    **In a Summary Judgment Motion, the Defense Chooses the Issues, and the Plaintiff Gets the Benefit of any Disputes.**

A district court must grant summary judgment where the record before it shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56 (c). The primary purpose of summary judgment is to "isolate and dispose of factually unsupported claims." *Alberio v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001).

"[A] party seeking summary judgment always bears the initial responsibility of *informing the district court of the basis for its motion,* and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)(emphasis supplied). The defendant, as the party seeking summary judgment, has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 322-23.

The Court must "consider the evidentiary record in the light most favorable to the plaintiff and draw all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). The Seventh Circuit has "routinely found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion." *Payne v. Pauley,* 337 F.3d 767, 771 (7th Cir. 2003).

This standard is applied with added rigor in cases, such as employment discrimination cases, where intent is inevitably the central issue. *McCoy v. WGN Cont'l Broad. Co.,* 957 F.2d 368, 370-71 (7th Cir. 1992). See also, *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir. 1985) ("`Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.'") (quoting *Pfizer, Inc. v. Int'l Rectifier Corp.,* 538 F.2d

2

180, 185 (8th Cir. 1976), and *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 660 (7th Cir. 1991)).  Since this case involves issues of intent, summary judgment precepts holding that the plaintiff is entitled to prevail at every point where the evidence is in conflict and that the plaintiff is entitled to have all available inferences drawn in her favor, even if a trier of fact might choose not to draw such inferences, should be scrupulously observed.

Courts must be quite circumspect in evaluating the movant's factual averments "when evidence bearing on a particular matter lies within the exclusive possession of the party seeking summary judgment." *Avery v. Mapco Gas Prods., Inc.,* 18 F.3d 448, 452 n.4 (7th Cir. 1994); *see also Reserve Supply Corp. v. Owens-Corning Fiberglass Corp.*, 971 F.2d 37, 42 (7th Cir. 1992).

The Court should be cognizant that circumstantial evidence from which an inference of unlawful intent can be drawn is sufficient to create a triable issue of fact even in the face of the actor's declaration that no unlawful intent was present.  See, e. g., *Corrugated Paper Prods. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989).

II.     **A Reasonable Trier of Fact Could Find that the**
        **Policy-Maker Exception Does not apply to Polk**
        **County Deputy Sheriffs.**

While it is true that Sheriff's may shuffle policy making employees

for political reasons and that deputies in small counties were once

uniformly held to be policymakers, this holding did not survive *Fuerst v.*

*Clarke*, 454 F.3d 770, 773 (7th Cir. 2006).  In that case the Seventh Circuit

cited the size of the Milwaukee Sheriff's Department and a Wisconsin

Statute  (§ 164.015) guaranteeing political freedom to law enforcement

officers as evidence that sergeants in the Milwaukee Sheriff's Department

were not policy makers.  But the size of a department cannot logically be

the controlling factor, for if the Sheriff regularly had all 700 deputies vote

on policies, they would all probably be policy-makers.  Rather, the level of

responsibility for making decisions as to how the department will be run

and how the law will be enforced would seem to be the inevitable

controlling factor in this analysis.

In *Fuerst,* sergeants, who had some degree of supervisory

responsibility, were determined not to be policy-makers.  The chain of

command in Polk county in 2006 went from the Sheriff to the Chief

Deputy to the Field Services Lieutenant to, in the case of Patrol Officers,

their sergeants, and then to the street officers, and in the case of the civil

process server, directly to him.  (Declaration of Arling Olson, Exhibit A.)

In other words, Patrol Officers had three levels of supervision between

4

them and the Sheriff and the civil process server had two.  The civil process server was the bottom of the ladder; he did not even have clerical support he could direct.  There is no evidence that he exercised anything like policy-making discretion in his position.  There is no evidence he was ever consulted on matters of policy, or that his superiors wanted a civil process server they could consult on matters of policy.  After all, the holding of *Upton v. Thompson*, 930 F.2d 1209 (7th Cir. 1991) turned on the fact that, particularly in a small department, a Sheriff's core group of advisers will likely include his deputies.  *Upton*, 930 F.2d at 1216-18. Given the evidence in this case an after *Fuerst*, neither the patrol deputies nor the civil process server could plausibly be viewed as policy makers in the Polk County Sherriff's Department.

The defense qualified immunity argument, barely mentioned in a footnote in the defense brief, should not be taken seriously.  "Arguments that are not developed in any meaningful way are waived." *Central States. Southeast and Southwest Areas Pension Fund v. Midwest Motor Express. Inc.*, 181 F.3d 799, 808 (7th Cir. 1999); see also *Finance Investment Co. (Bermuda) Ltd. v. Geberit AG* 165 E.3d 526, 528 (7th Cir. 1998); *Freeman United Coal Mining Co. v. Office of Workers Compensation Programs Benefits Review Board*, 957 F.2d 302,305 (7th Cir. 1992) (court has "no obligation to consider an issue that is merely raised, but not developed, in a party's brief').

### III.   A Reasonable Trier of Fact Could Find that Sheriff Moore Engaged in a Campaign of Petty Harassment of the Plaintiff after the 2006 Election.

Even if Plaintiff Olson could be viewed as a policy-maker as a patrol deputy or, after November 16, 2006, as a civil process server, there were limits to the sorts of actions that could lawfully be taken against him because he had run against Sheriff Moore.  The policy-maker exception to the rule of liability for retaliation motivated by protected expression has a rationale that supports permitting Sheriffs to reassign, and even demote or terminate disloyal policy-makers, but this rationale does not support exempting a campaign of petty harassment from liability for retaliation.

In *Wallace v. Benware*, 67 F. 3d 655, 661 (7th Cir. 1995), the court held that it would have been permissible for the Polk County the election on the ground that "once elected to public office, a sheriff should be entitled to place in the policymaking position of deputy sheriff loyal and trustworthy individuals who would be most effective in carrying out his electoral mandate." However, he could not lawfully undertake a campaign of petty harassment that included such things as taking the plaintiff off summer boat patrol duty, taking away his radio, taking away his radar unit, refusing to allow him to accept speaking invitations in the schools and sending other deputies in his place, requiring him and no other officer with patrol duties to leave his patrol car at the department

6

over the weekend, assigning him to cleaning duties not in his job

description. *Id.* at 657-59.

      In this case, the campaign of petty harassment endured by Plaintiff

Olson included impliedly threatening discipline for the Plaintiff's decision

to pose in his uniform for his campaign, even though Defendant Moore

had done the same thing (Plaintiff's Proposed Findings of Fact ¶¶ 2-7;

Plaintiff's Responses to Defendant's Proposed Findings ¶¶ 28-34);

requiring the Plaintiff and no other deputy to obtain advance approval

before working over time (Plaintiff's Proposed Findings of Fact ¶¶ 8-16);

assigning the Plaintiff to a zany schedule with as many as five different

starting times each work week  (Plaintiff's Proposed Findings of Fact ¶¶

17-34; Plaintiff's Responses to Defendant's Proposed Findings ¶¶62-67);

not issuing the plaintiff a radar unit or a Taser  (Plaintiff's Proposed

Findings of Fact ¶¶ 35; Plaintiff's Responses to Defendant's Proposed

Findings ¶¶ 75-83); investigating Plaintiff Olson for purchasing a firearm

from a crime victim (Plaintiff's Proposed Findings of Fact ¶¶ 35-45); trying

to prove Plaintiff Olson had ignored an e-mail request from the District

Attorney's office(Plaintiff's Proposed Findings of Fact ¶¶ 52-54); arguably,

reassigning Plaintiff Olson to the civil process server position (Plaintiff's

Proposed Findings of Fact ¶¶ 46-47); and ginning up an internal

investigation and a criminal prosecution based on false allegations that

Plaintiff Olson had conducted an interview knowing that it was being

videotaped in violation of a promise made to the witness and his lawyer, and lied about knowing this both in court and to a state investigator. (Plaintiff's Proposed Findings of Fact ¶¶ 55-151). Even if not actionable under the due process theories discussed at the end of this brief, this latter should be actionable as part and parcel of a campaign of harassment.

The defense argues that Sheriff Moore was not involved in some of these assignments, but evidence suggests he was more involved than he has stated. When Plaintiff Olson confronted Lieutenant Smith about his schedule, Smith told him, "My hands are tied." Also, there is evidence that both Smith and Moore said that Moore was the decision maker when it came to the sergeants' schedules. Lieutenant Smith told Sergeant Waak that Sheriff Moore had a hand in a lot of Sgt. Waak's scheduling. (Waak deposition, 14, 10-17.) Sheriff Moore told Sgt. O'Hare that he wanted sergeants to work a rotating schedule of one month of days, one month of splits and one month of nights. (O'Hare deposition, 25-26.)

If some of the things about which the Plaintiff has complained, such as not being issued a Taser or radar unit, and not being given the training necessary to allow him to step effectively back into a patrol position, were inevitable consequences of the reassignment to civil process rather than individual retaliatory decisions, this just makes the reassignment to civil process all the more significant.

8

Finally, the aspects of this campaign of harassment should not be "analyzed independently" as the defense suggests.  (Defense Brief at 15.) When weighing their retaliatory power, they obviously must be considered together.

The defense argues that the actions taken against Plaintiff Olson were insufficiently severe to deter protected expression in the future. See, *Woodruff v. Mason*, 542 F. 3rd, 545, 551 (7th Cir. 2008).  The *Woodruff* panel derived this standard from *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006), which got it from *Spiegla v. Hull*, 371 F.3d 928, 935, 940-41 (7th Cir.2004).  The point the *Spiegla* court was making was that retaliatory conduct need not be so severe as to amount to a materially adverse employment action to be actionable:

> Before discussing whether the evidence supports a causal link between Spiegla's speech and her transfer and schedule change, we will briefly address the Defendants' contention that Spiegla did not suffer a sufficiently adverse employment action. The Defendants argue that Spiegla suffered no harm since she had agreed in writing to be available for assignment to any shift and that all of her assignments fell under the broad category of "perimeter duty" (a duty involving a variety of posts including gate security, escorting prisoners between complexes, and "towers.") However, a § 1983 case does not require an adverse employment action within the meaning of the antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964. See *Power v. Summers,* 226 F.3d 815, 820 (7th Cir. 2000). Rather, "[a]ny deprivation . . . that is likely to deter the exercise of free speech . . . is actionable." *Id*. (citing *Bart v. Telford*, 677 F.2d 622, 624 (7th Cir. 1982) (explaining that minor harassment, including making fun of an employee for bringing a birthday cake to the office, may be

sufficient to deter the exercise of First Amendment rights)).
Certainly, we cannot hold as a matter of law that transfer to
a more physically demanding and less skilled post and an
unfavorable change in schedule — even though such
actions may have been permissible under the terms of her
employment — are insufficient to deter the exercise of free
speech.

(*Id*., at 940-941, ellipses in original.)

### IV.   A Reasonable Trier of Fact Could Find that Sheriff Moore was Motivated to Retaliate Against the Plaintiff because of the Plaintiff's Protected Speech.

To establish a causal link between the protected
expression and a subsequent action by the employer, the
plaintiff must show that the protected conduct was a
substantial or motivating factor in the employer's decision.
See *Mt. Healthy City Sch. Dist. Bd. of Educ*, 429 U.S. at 287, 97
S.Ct. 568. As we recently clarified, "[a] motivating factor
does not amount to a but-for factor or to the only factor, but
is rather a factor that motivated the defendant's actions."
*Spiegla*, 371 F.3d at 942. Moreover, as in other contexts where
motivation is at issue, the plaintiffs are not required to come
forward with direct evidence or "the so-called smoking gun."
*Lewis v. City of Boston*, 321 F.3d 207, 219 (1st Cir.2003).
Circumstantial proof, such as the timing of events or the
disparate treatment of similar individuals, may be sufficient
to establish the defendant's retaliatory motive. See *Culver v.
Gorman & Co.*, 416 F.3d 540, 545-46 (7th Cir.2005).

*Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).

Sheriff Moore tried to get rid of his political enemies in a Field

Services meeting on November 16 2006, right after he won the election.

(Declaration of Arling Olson, ¶ 5, Olson Dep. p. 63, l. 8 - p. 66, l. 24,

10

Deposition Exhibit 8.) When Jared Cockroft and Plaintiff Olson did not

accpt his invitation to resign, he immediately reassigned them to less-

desirable positions. (Declaration of Arling Olson, ¶ 5, Olson Dep. p. 63, l. 8

- p. 66, l. 24, Deposition Exhibit 8.)  Sheriff Moore also gave voice to

considerable personal hostility toward Plaintiff Olson in his letters to

District Attorney Steffen.  (Declaration of Arling Olson, Exhibits L, N and

O.)

      Finally, he said things to Sergeant O'Hare evincing great hostility

toward Plaintiff Olson, Deputy Cockroft and others.  (O'Hare Deposition

16-25, Deposition Exhibit 29.)  He told O'Hare:

> Good, bad, or otherwise. I could have handed it out to
> people and said, look at what Ole Olson and Jared Cockroft
> and Jon  Carlson and, Pete Krumrie and Tony Grimm have
> done. Look at this. Ah, no. This was nothing, I could do that
> and they might all end up with a black eye but this
> department would end up with a bigger black eye. I have
> tried to keep this close to my chest. But when the copies are
> distributed throughout the county for one purpose and one
> purpose only?  That's personal. Sorry.

(Deposition Exhibit 29, p. 49.)

> I thought this was just a position to run this department.
> Never in the history of law enforcement and I've been
> around, and I've been around for 28 years. But I've never
> seen anyone that takes potshots at their boss, that filed
> complaints against — I never in my life seen that. You don't
> think these guys have sealed their careers for the rest of their
> life? Trust me- there's not a sheriff's department in the state
> of Wisconsin that will hire any of the above. You don't think
> sheriffs talk? You don't think sheriffs read federal lawsuits
> when they're filed?

11

(Deposition Exhibit 29, p. 51-52.)

Of course, it could be argued that this hostility was generated not by Plaintiff Olson's candidacy for Sheriff, but by his participation in the investigations of Sheriff Moore, but that, too, was protected expression under the First Amendment. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979).

> **V.    A Reasonable Trier of Fact Could Find that Sheriff Moore Demanded the Criminal Prosecution of the Plaintiff and Secured this Result by Misrepresenting the Facts and Withholding Decisive Evidence of the Plaintiff's Innocence.**
>
> > **A.    It is a Violation of the Due Process Clause of the Fourteenth Amendment for a Law Enforcement Officer to Cause the Criminal Prosecution of an Innocent Person by the Presentation of False Evidence or the Withholding of Decisively Exculpatory Evidence.**

As recognized in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), it is not helpful to refer to claims like the Plaintiff's as "malicious prosecution" claims.  See also, *Tully v. Barada*, 599 F.3d 591, 595 (7th Cir. 2010). Malicious prosecution is a state-law tort.  The Plaintiff has alleged that his due process rights were violated when Defendant Moore caused him to be criminally prosecuted by the presentation of fabricated evidence and the withholding of exculpatory evidence.

12

"Both manufacturing evidence and the suppression of evidence indicating innocence have long been held to violate the constitutional due process rights of a criminal defendant."  Michael Avery, Paying for Silence: The Liability of Police Officers under Section 1983 for Suppressing Exculpatory Evidence, 13 Temple Pol. & C.R. L. Rev 1 (Fall, 2003).

In *Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008), the Seventh Circuit affirmed a judgment against a police officer on a due process theory for withholding exculpatory evidence from and misleading prosecutors which led them to charge and convict an innocent man. Plaintiff Olson was not convicted, of course, but that is not fatal to his ability to bring a due process claim.  *Jones v. City Of Chicago*, 856 F.2d 985 (7th Cir. 1988):

> But the jury could find that the defendants systematically concealed from the prosecutors, and misrepresented to them, facts highly material to — that is, facts likely to influence — the decision whether to prosecute Jones and whether (that decision having been made) to continue prosecuting him right up to and into the trial.. . . The jury was entitled to find that had it not been for the misconduct of the defendants, Jones would neither have been arrested nor charged. Cf. *Dellums v. Powell*, 566 F.2d 167, 192-93 (D.C. Cir. 1977).

Id., at 993.

In that case, the Seventh Circuit went on to say, " a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial — none of these decisions will

shield a police officer who deliberately supplied misleading information that influenced the decision." *Id.*, at 994.  Later, the court said, "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded." *Id.*, at 994.

To make out a due process case arising out of a false criminal prosecution, a plaintiff must allege that police officers pressured or influenced a prosecutor to prosecute him through knowing misstatements, untruthful testimony, or the cover-up or falsification of evidence. *Snodderly v. R. U.F.F. Drug Enforcement TaskForce*, 239 F.3d 892, 901 (7th Cir.2001); *Reed v. City of Chicago*, 77 F.3d 1049, 1053-54 (7th Cir.1996).

These sorts of claims survived the decision of the United States Supreme Court in *Albright v. Oliver*, 510 U.S. 266  (1994).  See, e.g. *Newsome v. McCabe*, 256 F.3d 747, 753 (7th Cir. 2001):

> Newsome has made a more serious claim that the
> defendants withheld information important to that
> prosecutorial (and judicial) decision . . .
> If Newsome can prove what he alleges, then under the
> approach of *Brady* and *Jones v. Chicago* he will establish a
> violation of the due process clause, a kind of violation for
> which officers McCabe and McNally do not have immunity.

14

In a recent opinion the Seventh Circuit has continued to hold that a criminal prosecution that would not have gone forward without a *Brady* violation can be actionable as a due process violation.

> We held that to state a *Brady* violation claim when the criminal trial ended in acquittal, if such a claim exists, the plaintiff would need to show that "the decision to go to trial would have been altered by the desired disclosure." *Bielanski* [*v. County of Kane*], 550 F.3d [632] at 645 [(7th Cir.2008)], (citing *Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir.2008)). Following *Bielanski*, we now ask whether there is any evidence in the record that would show: (1) that the officers withheld materially favorable evidence from Mosley, and (2) had the officers disclosed that evidence sooner, it would have altered the decision to go to trial. In other words, Mosley must show that if all parties had known of some piece of exculpatory evidence, the prosecution would not have moved forward with charges. . .
>
> *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir., 2010).

See also, *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009) (due process claim viable even in cases of acquittal where misconduct affected decision to prosecute).

The defense cites *Avila v. Pappas*, 591 F.3d 552 (7th Cir. 2010) and *Tully v. Barada*, 599 F.3d 591 (7th Cir. 2010) for the propositions that a fourth Amendment violation requires a seizure and there is no due process right not to be prosecuted without probable cause.  These bald statements are correct but the Plaintiff has not alleged a Fourth Amendment violation and his allegations of withholding exculpatory

15

evidence and presenting false evidence to the prosecutor are more serious than mere prosecution absent probable cause.  See *Tully*, id., at 595:

> Our holding should not be misconstrued to deny any rights
> to parties whom prosecutors or other officials falsely accuse
> by way of fabricating evidence, withholding exculpatory
> evidence, tampering with witnesses, or committing any
> other independent constitutional violation, none of which
> Tully alleged in his complaint.

The defense tacitly recognizes the continuing vitality of such claims when it confronts them on their merits at pp. 22-26 of its brief.  On the merits, though, there is ample evidence for the Plaintiff to survive summary judgment.

> **B.    There are Material Issues of Fact for Trial as
> to Whether Defendant Moore Presented False
> Evidence or Withheld Decisively Exculpatory
> Evidence.**

A reasonable trier of fact could find that Defendant Moore misrepresented the truth to the prosecutors when, in his first letter to District Attorney Steffen, he told Steffen that Plaintiff Olson's testimony on November 18, 2002 in the Johnson case was "false." (Declaration of Arling Olson, ¶ 69, Exhibit L.)  A reasonable trier of fact could find that Moore and Joy made the videotape, as the tape label itself (Deposition Exhibit 14) indicates, and that Moore knew this when he wrote to Steffen.

A reasonable trier of fact could find that Moore declined to involve outside investigators in his case against Plaintiff Olson, despite his

16

admission that that would be his ordinary practice where he had a "vested interest" (Declaration of Arling Olson, ¶ 72, Exhibit N), in order to protect his ability to present a false and incomplete version of the evidence to prosecutors and ensure the commencement of criminal proceedings.

A reasonable trier of fact could find that Moore withheld Plaintiff Olson's explanation for his handling of the tape after it was made, proffered during his internal investigatory interview in June of 2008, from prosecutors, not because of concerns about its confidentiality, but because it was potentially exculpatory.  (Declaration of Arling Olson, ¶ 71.)

On this record, a reasonable trier of fact could find that when Moore finally did send along a copy of the videotape label (Deposition Exhibit 14) to Steffen, he withheld the crucial fact that it showed him as one of the two persons who had recorded the tape.  (Declaration of Arling Olson, ¶ 74, Exhibit O.)

Finally, a reasonable trier of fact could find, based on the criminal complaint,  that Moore falsely communicated to Berg in some fashion that Plaintiff Olson's badge number was 917, one of the two numbers shown on the videotape as having recorded it, when in reality 917 was Ray Joy's number, and he was one of the persons whom the evidence of Plaintiff Olson and Jared Cockroft placed at the controls when the videotape was made. (Declaration of Arling Olson, ¶ 79, Exhibit Q.)

17

**C.**     **The Theoretical Availability of a State Law Malicious Prosecution Claim does Not Defeat the Plaintiff's Due Process Claim.**

The defense argues that the availability of a state law remedy defeats the Plaintiff's claims.  See, e.g., *Parish v. City of Chicago*, 594 F.3d 551, 552 (7th Cir.2009) (indicating that "Seventh Circuit precedent does not permit an action for malicious prosecution under § 1983 if a state remedy exists"); *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir.2001) (indicating that there is no "constitutional tort of malicious prosecution when state courts are open"); see also *Wallace v. Kato*, 549 U.S. 384, 390 n. 2, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (indicating that the Court has not "explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983"); *Tully v. Barada*, 599 F.3d 591, 593 (7th Cir.2010) (stating that "[t]he Supreme Court has neither recognized nor foreclosed the possibility of plausibly asserting a right not to be prosecuted without probable cause under § 1983, either under the Fourth Amendment ... or the Fourteenth Amendment's Procedural Due Process Clause").

The Seventh Circuit has indicated, however, that, in some instances, a claim could properly be brought as a claim based on *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963), which provides that the prosecution must disclose evidence that is favorable to the defense, and the availability of a state law malicious prosecution action has not been held to defeat such claims, or claims involving the presentation of fabricated evidence.

18

*Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir., 2010); Indeed, *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009) recognized this as a separate claim that is not defeated by the availability of a state-law malicious prosecution claim.

It is also dispositive that the rule of *Parratt v. Taylor*, 451 U.S. 527 (1981) does not apply where the deprivation in question occurred as the result of the deliberate act of a policy maker who was equipped to provide adequate due process and did not. *Matthiessen v. Board of Educ. of North Chicago Community High School Dist. 123, Lake County, Ill*. 857 F.2d 404, 407 n.3 (7th Cir. 1988)("the single act of a sufficiently high-ranking policymaker may equate with or be deemed established state procedure.") Here, it was the Sheriff himself who acted against Plaintiff Moore. See, *e.g.*, *Wilson v. Civil Town of Clayton*, Ind. 839 F.2d 375, 381 (7th Cir. 1988) (defining "official policy" for the purpose of finding *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), satisfied and *Parratt* therefore necessarily inapplicable).

> **D.   A Reasonable Jury Could Find that the Criminal Prosecution of Plaintiff Olson would not have Occurred without Defendant Moore's Presentation of False Evidence and Withholding of Decisively Exculpatory Evidence.**

The defense contends that Plaintiff Olson suffered no prejudice from Defendant Moore's wrongdoing, but a reasonable jury could surely

19

find otherwise.  The record is full of decisions by prosecutors declining to prosecute Sheriff Moore because of deficiencies in the evidence. (Declaration of Arling Olson, Exhibits K, X.)  special Prosecutor Kutz had two eyewitnesses who placed Moore and Joy at the controls of the videotape equipment when the videotape was made and declined to prosecute because his witnesses had been political opponents of Moore, and because one piece of evidence indicated that the tape had passed through Olson's hands at some point. (Declaration of Arling Olson, Exhibit K.) Clearly, there would seem to be a rather high bar for persuading local prosecutors to bring criminal charges.  It is almost laughable to suggest that the special prosecutor in Plaintiff Olson's case would have gone forward with his case had either a) Moore been forthright and admitted that he and Joy made the tape instead of saying that Plaintiff Olson had to have done it, or even b) simply told the prosecutor when he sent in the tape label that 917 was Joy and 903 was Moore, such that the label showed that the tape was recorded by the same two people whom the testimony of Cockroft and Plaintiff Olson placed at the controls when the tape was made.

And it is certainly facile to say that because he secured a dismissal at his preliminary hearing, Plaintiff Olson was not injured, when the fact that he was prosecuted remains an easily accessible public record, and a lifelong embarrassment.

20

## Conclusion

The Court should deny the Motion for Summary Judgment in its entirety.

Dated this Friday, February 18, 2011.

Respectfully submitted,

Arling Olson, Plaintiff

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone:                    (608) 283-6001
Facsimile:                (608) 283-0945
E-mail:                   jsolson@scofflaw.com

/s/ Jeff Scott Olson

_____
JEFF SCOTT OLSON

ATTORNEYS FOR PLAINTIFF

21

**Certificate of Service**

I hereby certify that on Friday, February 18, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Oyvind Wistrom. I hereby certify that I have mailed by United States Postal Service the document to the following non ECF participants: none.

/s/ Jeff Scott Olson

22